UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | No. 08 CR 0106 |
| | ) | |
| RAYMIE HENDERSON, | ) | Judge James B. Moran |
| NOWELL PATRICK LANDO and | ) | |
| AUGUSTUS WRIGHT, | ) | |
| Defendants. | ) | |

**AUGUSTUS WRIGHT'S REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO DISMISS COUNT ONE OF THE INDICTMENT BECAUSE THE APPLICABLE STATUTE OF LIMITATIONS FOR THE OFFENSE OF MONEY LAUNDERING EXPIRED BEFORE THE GOVERNMENT INDICTED THE DEFENDANTS**

NOW COMES defendant, AUGUSTUS WRIGHT, by and through his attorney, STANLEY L. HILL, and as his reply to the government's response to defendants' motion to dismiss Count One of the indictment because the applicable statute of limitations for the offense of money laundering expired before the government indicted the defendants states the following:

1. Fed. R. Crim. P. 12(b) ensures that trials will be efficient and that defendants raise defenses "which [are] capable of determination without the trial of the general issue" before trial. *United States v. Risk*, 843 F. 2d 1059, 1061 (7th Cir. 1988); Fed. R. Crim. P. 12(b); *United States v. Griffin*, 765 F. 2d 677, 681 (7th Cir. 1985). Rule 12 (e) requires the court to make a pretrial determination on the motions raised by a defendant unless there is good cause not to do so. Fed. R. Crim. P. 12(e). Rule 12(e) also allows the court to consider factual issues in its disposition of a 12(b) motion. *Id.*; *United States v. Coia*, 719 F. 2d 1120, 1123 (11th Cir. 1983).

1

2. *Coia* is an Eleventh Circuit case cited by the Seventh Circuit Court of Appeals in *Risk, supra*, as authority for permitting a district court to consider factual issues in its disposition of 12(b) motions. In *Coia*, the government appealed a district court order that dismissed an indictment against defendants on the basis that the statute of limitations had passed. The government contended that the district court erred in resolving prior to trial the factual issue of whether the conspiracy continued into the statute of limitations period as alleged in the indictment. The court (reversed on other grounds) but held that the district court properly applied Fed. R. Crim. P. 17.1 in dismissing the claim, if the statute of limitations had actually expired. *United States v. Coia*, 719 F. 2d at 1123.

3. "It is perfectly proper, and in fact mandated, that the district court dismiss an indictment if the indictment fails to allege facts which constitute a prosecutable offense. Rule 17.1 of the Federal Rules of Criminal Procedure grants the court the power to hold pretrial conferences, 'to consider such matters as will promote a fair and expeditious trial.' The rule is essentially a codification of the court's inherent power to manage the litigation before it. Rule 17.1 operates in conjunction with rules 12(a) & (b) which grant the defendant the right to make certain motions prior to trial. The advisory committee notes to rule 12(b) (subdivisions (1) & (2)) list, among other things, ***insufficiency of the indictment under the applicable statute of limitations as specifically capable of determination prior to trial.*** Rule 12(e) further requires that the court make a pretrial determination on these pretrial motions unless there is good cause not to do so. Rule 12(e) further states that 'where factual issues are involved in determining a motion, the court shall state its essential findings on the record.' This clearly indicates that

2

findings of fact as well as of law are within the province of the district court to make in pretrial proceedings." *Id.* at 1123. The court's determination is permitted indeed mandated, by the Federal Rules of Criminal Procedure. *Id.*

4. The district court may take judicial notice of matters of public record. **United States v. Pitts-Des Moines, Inc.**, 970 F. Supp. 1346, 1349 (N.D. Ill. 1997). Thus, the government cannot and does not object to the court's consideration of the property transfer exhibits attached to defendant's motion, i.e., exhibits A through F, many of which were referenced in the indictment. See Government Response at page 4. Thus, even assuming the Affidavit of Attorney Matthew A. Flamm [Docket #52] is not considered (the government opposes it consideration at page 4 of its Response), there still remains ample evidence of matters of public record of which this Court may take judicial notice and make findings of fact and law that the statute of limitations expired before defendants were indicted. See *United States v. Risk*, 843 F. 2d 1059, 1061 (7th Cir. 1988) (the district court has authority to consider undisputed facts presented in support of the motion to dismiss where the government does not dispute or object to the evidence.).

5. The following facts are undisputed:

a. Titles to four parcels, 315 W. 155th Street, Harvey, IL; 6529 S. Aberdeen, Chicago, IL; 203 E. 17th Street, Chicago, IL; and 305-07 154th Place, Calumet City, IL were placed in R & P New Development's name between June 6, 2001 and December, 2001. See paragraphs 7 through 10 of the Indictment. **Exhibit A** attached to motion to dismiss Count One of the Indictment.

b. With respect to the fifth parcel, 10951 S. Michigan Avenue in Chicago, IL, this property was put in WRIGHT'S name on May 28, 2002 when HENDERSON gave WRIGHT a warranty deed which was recorded with the Cook County Recorder of Deeds on October 18, 2002. See Warranty Deed, Document No. 0021144580, Grantor Henderson Raymie/Grantee Wright, Augustus, attached as **Exhibit B** to motion to dismiss Count One

of the Indictment, and Cook County Recorder of Deeds Record, **Exhibit D**.

c. HENDERSON did not have title but possessed a contractual right to purchase the property from Sherwin Real Estate, the title-holder, when HENDERSON gave the warranty deed to WRIGHT on May 28, 2002, which was recorded on October 18, 2002. See copy of Real Estate Contract, Seller, Sherwin Real Estate/Purchaser, Ray Henderson, attached as **Exhibit C** to motion to dismiss Count One of Indictment.

d. Cook County Recorder of Deeds records establish Sherwin Real Estate conveyed title to 10951 S. Michigan Ave., Chicago, IL by quit claim deed to HENDERSON on November 25, 2002 which was recorded December 3, 2002. See Cook County Recorder of Deeds Document for PIN: 25-15-318-020-0000, the Permanent Index Number for 10951 S. Michigan, Chicago, IL, attached as **Exhibit D** to motion to dismiss Count One of Indictment and Quit Claim Deed, Document No. 0021330225, Grantor Sherwin Real Estate/Grantee Henderson Raymie G, attached as **Exhibit E** to motion to dismiss Count One of Indictment.

6. This Court may take judicial notice of the following matters of public records:

a. On February 7, 2003, HENDERSON executed a quit claim deed to WRIGHT, pursuant to 35 ILCS 200/31-45(d) to "correct and modify previously recorded deed" that HENDERSON gave to WRIGHT on May 28, 2002 with respect to 10951 S. Michigan Ave., Chicago, IL which warranty deed was recorded October 3, 2002. See Quit Claim Deed, Document No. 0311410091, attached as **Exhibit F** to motion to dismiss Count One of Indictment and Cook County Recorder of Deeds Record, **Exhibit D**.

b. On February 14, 2003, HENDERSON filed a Mortgage on 10951 S. Michigan Ave. Chicago, IL which was given on February 13, 2002 to Real Estate Investment Partners Club for $15,000. See Mortgage, Document No. 0030217543, filed with the Cook County Recorder of Deeds on February 14, 2003, attached as **Exhibit G** to motion to dismiss Count One of Indictment and Cook County Recorder of Deeds Record, **Exhibit D**.

7. The undisputed facts establish title was obtained by the defendants to the five properties alleged in Count One of the Indictment as purchased with Individual A's drug money on or before November 25, 2002. Titles to four properties were obtained by

4

HENDERSON and LANDO between June 6, 2001 and December, 2001. See paragraph 5a above. WRIGHT obtained title to the fifth property, 10951 S. Michigan Avenue allegedly for the benefit of Individual A, pursuant to the doctrine of after acquired property, 765 ILCS 5/7 (2008) on November 25, 2002. See paragraphs 4 through 9 of WRIGHT'S motion to dismiss Count One of the Indictment.

8. The indictment alleges that portions of Individual A's drug money was spent renovating property located at 10951 S. Michigan in Chicago, IL in or about 2001 through in or about 2002. See paragraph 6 of the Indictment.

9. Thus, each of the defendants' *purchases* of real estate allegedly acquired with Individual A's drug money and all of the *renovations* of the real estate with Individual A's drug money for the benefit of Individual A, that are alleged in the indictment to have been done to "clean up" Individual A's drug money were accomplished on or before November 25, 2002.

10. Therefore, the alleged money laundering scheme charged in the indictment was committed and the limitations period began to run on November 25, 2002, once the purchases and renovations of real estate for the benefit of Individual A as alleged in Count One of the indictment were completed by defendants.

11. Contrary to the government's misrepresentation at page 8 of its Response, the indictment returned by the grand jury in this case does not charge that defendants' scheme was a "continuing offense." See *United States v. Yashar*, 166 F. 3d 873, 877-880 (7th Cir., 1999). Thus, the running of the limitations period based on the indictment in this case began when the purchases and renovations of real estate for the benefit of Individual A as alleged in Count One of the indictment were complete. *Id.*

12. The government concedes the money laundering conspiracy's primary purpose – "the conspiratorial agreement"- was to "clean up" individual A's money through the purchase and renovation of property. Government's Response P. 6. In order for a conspiracy charge under 18 U.S.C. § 1956(h) to fall within the statute of limitations, the conspiracy must still have been ongoing within the five year period preceding the indictment. *United States v. LaSpina*, 299 F. 3d 165, 173 (2nd Cir. 2002). The crucial question in determining whether the statute of limitations has run is the scope of "the conspiratorial agreement," for it is that which determines the duration of the conspiracy. *Id.*

13. A conspiracy involves an agreement by at least two parties to achieve a particular illegal end. In order for a defendant to be convicted of conspiracy, there must be proof beyond a reasonable doubt that the conspirators agreed on the essential nature of the plan. *Id.* at 174. The court therefore focuses on the "essence of the underlying illegal objective to determine" the scope of the conspiracy. *Id.*

14. 18 U.S.C. § 1957 makes it a crime to knowingly engage or attempt to engage in a monetary transaction in criminally derived property of a value greater than $10,000 that is derived from specified unlawful activity. 18 U.S.C.S. § 1957(a) (2001). *Id.* The illegal objective of a conspiracy to engage in monetary transactions in violation of 18 U.S.C. § 1957(a) is the monetary transaction involving unlawfully obtained property, not the underlying act of unlawfully obtaining it. Therefore, because the monetary transaction is the illegal objective, a conspiracy to engage in such transactions continues as long as one or more conspirators engage in monetary transactions as contemplated by the conspiratorial agreement. *Id.*

15. In determining whether the statute of limitations has run, a court is required to analyze "the scope of the conspiratorial agreement, for it is that which determines both the duration of the conspiracy, and whether an act relied upon as an overt act may properly be regarded as in furtherance of the conspiracy." *Id.* at 175.

16. Accordingly, the conspirators' purpose or intent informs the scope of the conspiracy. Otherwise, a conspiracy knowingly to engage in monetary transactions in criminally derived property, 18 U.S.C. §1957(a), would be an indefinitely continuing offense with an indeterminate statute of limitations. *Id.*

17. Where as in the instant case as conceded by the government, the primary purpose or intent –"the conspiratorial agreement"- of the money laundering conspiracy was to "clean up" individual A's money through the purchase and renovation of property. The conspiracy continued until this objective of the conspirators was achieved. *United States v. LaSpina*, 299 F.3d at 175. As established above, this purpose was completed on November 25, 2002 when WRIGHT obtained title to the fifth and last parcel of property located at 10951 S. Michigan Avenue. It is undisputed that renovations to this property predated the transfer of the property to WRIGHT. According to paragraph 6 of the indictment the renovations occurred in or about 2001 through in or about 2002.

18. The conspiracy does not include any and every transaction involving the criminally derived property. *LaSpina*, 299 at 175. If a transaction is not deemed part of the conspiratorial agreement and to further the original aims of the conspiracy to "conceal" and "disguise" the "nature, source, the ownership or control" of the proceeds, the transaction is not within the scope of the conspiracy. *Id.* The Cook County Recorder of Deeds Record establishes that the February 7, 2003 quit claim deed was an exempt

transaction, pursuant to 35 ILCS 200/31-45(d) (2008) because the deed was given without any additional consideration, to correct or modify a previously recorded deed. See paragraphs 12 through 14 of WRIGHT'S motion to dismiss Count One. As conspicuously shown on the face of the deed, the transaction was exempt pursuant to Section 31-45. This means no additional consideration was given for the quit claim deed. The transaction certainly did not involve the use Individual A's alleged drug money-or for that matter any money, because no additional consideration was given for the deed. See Exhibit F, attached to WRIGHT'S motion to dismiss Count One. The quit claim deed and the Recorder of Deeds record establishes the February 7, 2003 deed transaction was not in furtherance of the alleged "conspiratorial agreement." It did not involve the proceeds of specified unlawful activity (no additional consideration was paid), nor did it give title to 10951 S. Michigan Avenue to WRIGHT (Wright obtained title on November 25, 2002.). This deed was given to estop HENDERSON and all persons in privity with him from later denying that the interest WRIGHT previously obtained in 10951 S. Michigan on May 28, 2002 (when Sherwin Real Estate was the actual titleholder of the property) was effectively conveyed. See 765 ILCS 5/10 (2008). Quit claim deed may be used for estoppel purposes to establish a deed from grantor expressed the intention to convey, and he and all persons in privity with him will thereafter be estopped from denying that the interest was effectively conveyed, and when it vests, the estate inures to the benefit of the grantee. *Citizens Nat'l Bank v. Glassbrenner*, 377 Ill. 270, 36 N.E.2d 364 (1941). Thus, this Court may take judicial notice of this transaction and find that it did not constitute an act in furtherance of the conspiratorial agreement. Not every

transaction involving the alleged criminally derived property is part of the conspiracy. *LaSpina*, 299 at 175.

19. Moreover, the Mortgage and the Recorder of Deeds record establishes that the February 14, 2003 transaction is a mortgage on 10951 S. Michigan for a loan from Real Estate Partners Club in the amount of $15,000 given on February 13, 2002, not HENDERSON'S purchase of 10951 S. Michigan from Sherwin Real Estate in the fall of 2002. See paragraph 15 of WRIGHT'S motion to dismiss Count One, **Exhibit G**, attached and Recorder of Deeds Record, **Exhibit D**. Likewise, this Court may take judicial notice of this transaction and find that it did not constitute an act in furtherance of the conspiratorial agreement.

20. The government's own facts alleged in the Indictment, the facts which the government does not object to or dispute, the public records which this court may judicially notice and Illinois statutory law, 765 ILCS 5/7 (2008), establish the statute of limitations began to run as of November 25, 2002. The defendants' alleged "conspiratorial agreement" – to "clean up" individual A's money through the purchase and renovation of property was completed with WRIGHT'S receipt of title to the 10951 S. Michigan Avenue property on November 25, 2002. Because the defendants were not indicted until after November 25, 2007, Count One of the indictment must be dismissed because the statute of limitations for the offense of money laundering expired before the government indicted defendants.

21. Contrary to the government's misrepresentation, the indictment does not allege anywhere that "the objective (of the conspiracy) was accomplished by Wright's continuing possession of the property." (Government's Response at page 8).

22.   Moreover, the government's argument (which is not supported by any allegation in the Indictment returned by the grand jury) that the Wright's continued possession of title to the property located at 10951 S. Michigan for the benefit of A, as charged in the indictment into the limitations period shows the conspiracy continued to exist into the limitation period is debunked by the holding in *LaSpina*. A money laundering conspiracy is not "an indefinitely continuing offense with an indeterminate statute of limitations. *LaSpina*, 299 at 175. The scope of the conspiratorial agreement determines the duration of the conspiracy, and whether an act relied upon as an overt act may properly be regarded as in furtherance of the conspiracy. *Id.* Here as conceded by the government the conspiratorial agreement was to "clean up" individual A's money through the purchase and renovation of property, not simply to put Wright's name on the property. Government's Response at page 6. This objective according to the indictment was completed when title to 10951 S. Michigan was put in WRIGHT'S name allegedly for the benefit of Individual A which the Recorder of Deeds records establish, and which this Court may judicially notice, occurred on November 25, 2002, not February 7, 2003.

23.   The indictment was filed February 5, 2008, seventy two (72) days after the statute of limitation ran on November 25, 2007, therefore Count One of the Indictment should be dismissed.

WHEREFORE, for the foregoing reasons, AUGUSTUS WRIGHT'S motion to dismiss Count One of the Indictment should be granted.

Respectfully submitted,

/s/ Stanley L. Hill
Attorney for Defendant Augustus Wright

**STANLEY L. HILL & ASSOCIATES, P.C.**
651 West Washington Boulevard Suite 205
Chicago, Illinois 60661
T. (312) 917-8888
F. (312) 781-9401
E. stanhill@core.com
W.stanhilllaw.com